UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | | |
|---|---|---|
| JIMMY DEAN COCHRANE, | ) | |
| | ) | |
| Plaintiff, | ) | 2:16-CV-0066 |
| | ) | |
| vs. | ) | |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the United States Magistrate Judge with consent of the parties and by order of reference [Doc. 23] for disposition and entry of a final judgment. Plaintiff's Disability Insurance Benefits and Supplemental Security Income applications under the Social Security Act, Titles II and XVI were denied after a hearing before an Administrative Law Judge ("ALJ"). This action is for judicial review of the Commissioner's final decision per 42 U.S.C. § 405(g). The Commissioner has filed a motion for summary judgment [Doc. 21]. Plaintiff has filed a motion to approve disability claim, which the Court will treat as a motion for judgement on the pleadings [Doc. 17].

**I. APPLICABLE LAW – STANDARD OF REVIEW**

A review of the Commissioner's findings is narrow. The Court is confined to determining (1) whether substantial evidence supported the factual findings of the ALJ and (2) whether the Commissioner conformed with the relevant legal standards. 42 U.S.C. § 405(g); *see Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). "Substantial evidence" is evidence that is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict

when the conclusion sought to be drawn is one of fact. *LeMaster v. Sec'y of Health & Human Servs.,* 802 F.2d 839, 841 (6th Cir. 1986). A court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if a court were to resolve factual issues differently, the decision must stand if substantial evidence supports it. *Listenbee v. Sec'y of Health & Human Services,* 846 F.2d 345, 349 (6th Cir. 1988). But, a decision supported by substantial evidence "will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007).

A claimant must be under a "disability" as defined by the Act to be eligible for benefits. "Disability" includes physical and mental impairments that are "medically determinable" and so severe as to prevent the claimant from (1) performing her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. 42 U.S.C. § 423(a).

A five-step sequential evaluation applies in disability determinations. 20 C.F.R. §§ 404.1520 & 416.920. Review ends with a dispositive finding at any step. *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The complete review poses five questions:

1. Has the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the "Listings"), 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's [Residual Functional Capacity], can he or she perform his or her past relevant work?

5. Assuming the claimant can no longer perform his or her past relevant work — and also considering the claimant's age, education, past work experience, and RFC — do significant numbers of other jobs exist in the national economy which the claimant can perform?

20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4).

A claimant has the burden to establish entitlement to benefits by proving the existence of a disability under 42 U.S.C. § 423(d)(1)(A). *See Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). The Commissioner has the burden to establish the claimant's ability to work at step five. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## II.     RELEVANT FACTS AND PROCEDURAL OVERVIEW

Jimmy Dean Cochrane ("Cochrane") filed applications for disability insurance and supplemental security income in April 2011. *See* 20 C.F.R. §§ 404.1563 & 416.963. The alleged onset date was November 26, 2010. (Doc. 14, Transcript pp. 99) (reference to "Tr" and the page denote the administrative record). Cochrane's claims were denied on July 15, 2011. (Tr. 99). The claims were again denied upon reconsideration in January 2012. (*Id.*). An ALJ conducted a hearing on February 4, 2014. Cochrane and a vocational expert testified. (Tr. 117-32).

In April 2005, five years prior to his alleged onset date, Cochrane was treated for acute coronary syndrome with coronary artery disease (CAD) and had stents implanted (Tr. 452-53, 465). In February 2007, he was admitted twice to the hospital for chest pain after being arrested for being intoxicated (Tr. 480, 490). Diagnostic tests were all normal (Tr. 492, 494, 496).

On the alleged onset date of November 26, 2010, Cochrane was admitted to Henry Medical Center for abdominal pain (Tr. 382). An echocardiogram was normal. He was discharged five days later with a prescription for an anticoagulant. (Tr. 382). A month later he returned to Henry Medical Center with right-sided weakness (Tr. 362, 364). All testing was negative and there was no evidence of any cerebrovascular accident (Tr. 362, 369, 375-79). His symptoms resolved while hospitalized. He was diagnosed with weakness secondary to alcohol withdrawal (Tr. 365).

On June 29, 2011, Bato Amu, M.D., a State agency reviewing physician, noted that Cochrane had a history of coronary disease with stent placement, inguinal hernia repair, and

splenic and renal infarctions (Tr. 409). He opined that all of these conditions were non-severe as they had resolved either while in the hospital or did not pose any impairment, restrictions or limitations.

At the administrative hearing, the vocational expert testified Cochrane could not return to his past work. The ALJ asked a hypothetical assuming an individual who could perform light work but could only perform and maintain concentration and persistence for simple, routine and repetitive tasks (Tr. 128). The VE identified jobs such as production assembler, automatic carwash attendant, and parking lot attendant. The VE testified that those jobs exists in significant numbers in the national and regional economy (Tr. 128-29).

The ALJ followed the five-step analysis in evaluating the claims and reaching a decision. The ALJ found Cochrane had severe impairments, (Tr. 101), but was not disabled. The April 22, 2014, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2014;

2. The claimant has not engaged in substantial gainful activity since November 26, 2010, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*);

3. The claimant has the following severe impairments: history of stroke with residual memory problems, ischemic heart disease, a back disorder, measureable borderline intellectual functioning, and history of drug/alcohol abuse (20 CFR 404.1520(c) and 416.920(c));

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926);

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he is only able to perform and maintain concentration and persistence for simple, routine repetitive tasks;

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965);

7. The claimant was born [in 1963] and was 47 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963);

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964);

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2);

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969 and 416.969(a)); and

11. The claimant has not been under a disability, as defined in the Social Security Act, from November 26, 2010, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 99-109). The Appeals Council denied the review request. (Tr. 1).

### III. ANALYSIS

Cochrane argues this Court "reconsider the denial by the Social Security Administration of Claimant's pending request for disability benefits" [Doc. 17, pg. 1]. He argues that his suffers from a "severe, chronic and disabling heart condition, in conjunction with a series of strokes. The combined effects of these medical impairments make it impossible for [him] to secure gainful employment." [Doc. 17, pg. 1]. In the two paragraphs that comprise "Argument" section, Cochrane reiterates that he has a "chronic medical condition" that has "rendered him unable to secure and/or maintain gainful employment. Consequently, [he] lacks the ability to generate income to provide for his support...." [*Id*.]. He requests that his "total disability be acknowledged" and the Court award him benefits. [*Id*.]. The Commissioner opposes the motion.

A.  **Whether substantial evidence supports the ALJ's decision finding Cochrane not disabled**

Cochrane's primary argument is that his cardiac condition renders him disabled. However, there is no objective medical evidence supporting his position. To be sure, Cochrane had stents placed in his heart in 2005 but there is no evidence that he suffers from any disabling cardiac condition. He received treatment in August 2010 for chest pain, but all diagnostic tests were normal. Both the EKG and chest x-ray examinations were normal. As the Commissioner notes, when Cochrane was seen several months later for splenic and right renal infarcts, an ultrasound revealed no evidence of mural thrombi occluding any of his large blood vessels or heart. The EKG performed then was normal as well (Tr. 106, 382, 390, 392-95).

Cochrane also has not been treated for any cardiac conditions apart from several emergency room visits in 2010. As noted by SSR 16-3p, the ALJ may consider "an individual's attempts to seek medical treatment for symptoms and to follow treatment once it is prescribed when evaluating whether symptom intensity and persistence affect the ability to perform work-related activities…." This was a relevant consideration in finding Cochrane did not suffer from any significant impairments as a result of his cardiac condition.

He claims that he suffered from a series of strokes. The evidence does not support that. Cochrane was hospitalized in 2010 for right-sided weakness and the diagnostic tests were negative. Indeed, the medical records indicate the weakness was secondary to alcohol withdrawal not a cardiac event. (Tr. 365). Cochrane argues he suffers from a lack of oxygenation as a result of his cardiac condition. He cites to no medical records supporting that position. In fact, the Commissioner aptly noted that a November 2010 echocardiogram revealed no evidence of pericardial effusion and normal left ventricular size and systolic function (Tr. 392-93).

The ALJ correctly followed the five-step analysis. First, the ALJ determined that Cochrane

was not engaging in substantial gainful activity and had not worked since late 2010. (Tr. 101). He next found that Cochrane has several severe impairments. (*Id*.) He did not find that the impairments or a combination thereof met or medically exceeded the listing criteria. (Tr. 102-04). Further, there was no indication that the record before the ALJ identified an issue with lack of oxygenation as Cochrane now claims and the record reveals he is a smoker despite repeated recommendations that he quit. Such failure can be considered a lack of compliance with treatment that the ALJ may rely upon to find allegations as to symptoms and persistence inconsistent with the record as a whole. *See* SSR 16-3p. These determinations satisfy the first three steps.

Next, the ALJ established a light RFC with restrictions. In so doing, he reviewed credibility. "It is . . . for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec*., 486 F.3d 234, 247 (6th Cir. 2007). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Id.* The ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." S.S.R. 16-3p. In making credibility judgments, an ALJ should consider:

(i) [The claimant's] daily activities;

(ii) The location, duration, frequency, and intensity of [the claimant's] pain or other symptoms;

(iii) Precipitating and aggravating factors;

(iv) The type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate [the claimant's] pain or other symptoms;

(v) Treatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of [the claimant's] pain or other symptoms;

(vi) Any measures [the claimant] use[s] or ha[s] used to relieve pain or other

> symptoms . . . ; and
>
> (vii) Other factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 416.929(c)(3). An ALJ must consider the "entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record" and will "not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual." S.S.R. 16-3p.

The Court has reviewed the decision and finds the ALJ complied with the applicable authority and guidance in assessing Cochran's credibility. The ALJ reviewed the various medical opinions in conjunction with the treatment records and found the claimant's statements as to intensity, persistence and limiting effects of his symptoms not entirely credible. Likewise, the ALJ noted that Cochrane was generally active in his daily life, including performing various indoor and yard chores, driving, walking and bathing dogs, and watching television. (*Id*.) He also had generally received no more than conservative medical care for his conditions. (*Id*.).

The ALJ properly weighed the medical evidence and expert opinions in establishing Cochrane's RFC. The record supports these determinations as there is limited or no evidence of functional limitations arising from the impairments and little apparent need for more than conservative treatment. Substantial evidence supports the ALJ's RFC determination. Based on that RFC, the VE identified significant jobs in the economy which Cochrane could perform. The decision complies with applicable authority and is supported by substantial evidence.

**B.     Whether Work Exists in the National Economy**

Cochrane argues that there are no jobs he can find due to his chronic cardiac condition. The Court disagrees. The Act provides that "work which exists in the national economy means work that exists in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A). The regulations explain the "significant numbers" requirement:

> Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications. Isolated jobs that exist only in very limited numbers in relatively few locations outside of the region where you live are not considered "work which exists in the national economy". We will not deny you disability benefits on the basis of the existence of these kinds of jobs.

20 C.F.R. §§ 404.1566(b) & 416.966(b).

"There is no bright line boundary separating a 'significant number" from an insignificant number of jobs. *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988). The Sixth Circuit has specified factors that can be considered in determining if a number is significant, including the level of disability, the reliability of the vocational expert testimony, the reliability of the claimant's testimony, the distance the claimant is capable of traveling to engage in the work, the isolated nature of jobs, and the type and availability of work. *Hall v. Bowen*, 837 F.2d 272 (6th Cir. 1988). These factors are, however, "suggestions . . . the ALJ need not explicitly consider each factor," and the Act and regulations "make it clear that the test is whether work exists in the national economy, not in the plaintiff's neighborhood." *Harmon v. Apfel*, 168 F.3d 289, 292 (6th Cir. 1999). If work exists, the claimant will not be found disabled.

Cochrane ostensibly believes that an inability to secure employment means jobs do not exist in significant numbers that he can perform. The ALJ followed the appropriate process relative to steps four and five. The ALJ called a VE testify with regard to two hypothetical

scenarios. In each, the hypothetical claimant had a light RFC and various limitations described by the ALJ, although the second hypothetical scenario provided that the claimant's ability to stand, walk and sit were greatly diminished. (Tr. 51). The VE confirmed that the hypothetical claimant could not perform Cochrane's past relevant work and jobs exist in the national economy for the first hypothetical claimant. (*Id*.). Examples of work that exists include power screwdriver operator, production assembler, automatic car wash attendant, and parking lot attendant. (Tr. 128). No jobs would exist for the second hypothetical claimant.

The VE then testified regarding the number of such jobs that exist in the regional and national economies. The numbers ranged from 225 to 3,200 positions in Tennessee and from 22,000 to 60,000 in the national economy. (*Id.* at 128-29). In finding that the numbers of jobs identified were significant, the ALJ addressed the suggested factors. (Tr. 108). The ALJ first determined that Cochrane's statements regarding his pain and other limiting symptoms were not completely credible in light of his daily activities and, lack of more aggressive medical care for his claimed conditions. (*Id*). Similarly, the medical evidence did not support the existence of pain to the degree alleged. (Tr. 107-08). This determination relates to the reliability of claimant testimony under *Hall*. The ALJ also noted the level of Cochrane's conditions by referencing his limitations, adopting the light RFC and by discussing the number of jobs in the economy that Cochrane could have performed. (Tr. 109). This confirms the ALJ's consideration of Cochrane's status and limitations.

With regard to the numbers of jobs identified, extensive authority discusses the numbers that satisfy the threshold of "significant." There is no "magic number" for determining the amount of jobs that constitute significant work in the national economy, but there are various cases within the Sixth Circuit that indicate as few as 200 regional jobs and 6,000 jobs in the national economy are sufficient. *See Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902 (6th Cir. 2016) (6,000 in national

economy jobs "fits comfortably" within what courts have found significant); *Martin v. Comm'r of Soc. Sec.*, 170 F.App'x 369, 375 (6th Cir. 2006) (870 regional jobs constitutes significant work); *see also Nejat v. Comm'r of Soc. Sec.*, 359 F.App'x 574, 578-79 (6th Cir. 2009) (finding 2,000 jobs significant); *Putnam v. Astrue*, 2009 WL 838155 (E.D. Tenn. Mar. 30, 2009) (finding 200-250 regional jobs and 75,000 national jobs constitute a significant number). The numbers of jobs identified by the VE certainly constitute a significant number.

The VE did not identify any conflicts between her opinion and the Directory of Occupational Titles in response to the ALJ's request that he do so. (Tr. 127-29). The ALJ then adopted a light RFC and limitations established in the first hypothetical scenario in the decision (Tr. 18). The ALJ found work exists in substantial numbers that a claimant with Cochrane's limitations could perform and determined that Cochrane was not disabled. Substantial evidence supports the ALJ's conclusion in this regard.

**C.    Post-Hearing Evidence**

During the Appeals Council review, Cochrane submitted extensive medical records dated after issuance of the ALJ's decision on April 22, 2014 (Tr. 8-94). The additional materials include nearly 90 records dating from May 7, 2014 through January 2015 and from October 20, 2015 to November 3, 2015. He represented to the Appeals Council that such records were being provided to "verify that [he] has a chronic condition," and show that he has been diagnosed with a life-threatening heart condition (Tr. 95). The Appeals Council advised it had "looked" at the post-decision records, but considered them to be new information about a later time that would not affect the disability determination. (Tr. 2.)

> The Social Security regulations guide the Court in its treatment of post-decision evidence:
>
> If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the

11

> period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds the administrative law judge's action, findings or conclusion is contrary to the weight of evidence currently of record.

20 C.F.R. § 404.970(b). The Sixth Circuit has held that evidence submitted after the ALJ's decision cannot be considered part of the record for purposes of substantial evidence review. *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996) ("[W]here the Appeals Council considers new evidence but declines to review a claimant's application for disability insurance benefits on the merits, a district court cannot consider that new evidence in deciding whether to uphold, modify or reverse the ALJ's decision").

However, a court may remand for further administrative proceedings if the claimant shows that the evidence is "new and material" and there was good cause for not presenting it in the earlier proceeding. *Id.* Evidence is "new" is was "not in existence or available to the claimant at the time of the administrative proceeding." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001)(quoting *Sullivan v. Finkelstein,* 496 U.S. 617, 626, 110 S.Ct. 2658, 110 L.Ed.2d 563 (1990)). Evidence is "material" only if there is "a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Id.* quoting *Sizemore v. Sec'y of Health & Human Servs.,* 865 F.2d 709, 711 (6th Cir.1988). New evidence must relate back to the claimant's condition prior to the date last insured. *See King v. Sec'y of Health & Servs.*, 896 F.3d 204, 205-06 (6th Cir. 1990). The claimant has the burden to prove the evidence is new and material.

The Court has reviewed the records and finds that they are not material. The medical records reflect medical appointments for a new injury and ongoing treatment, including hospitalizations for cardiac care. But, only three of the nearly 90 pages bear a date prior to the expiration of his insured status of June 30, 2014. These pages are emergency room records related to a motor vehicle accident in which Cochrane sustained a contusion and swelling to his right index finger. (Tr. 75.) Such records are not material. There is no reasonable probability that swelling

and a contusion to a finger, a condition which does not appear to have been severe or permanent, would result in a different disposition on remand.

The remainder of the records are dated after the expiration of his insured status. They suggest a deterioration in Cochrane's heart condition in mid to late 2015. While the records are presumably new, they are not material as they reflect developments after the ALJ's decision and the expiration of his insured status. *See Oliver v, Sec'y of Health & Human Servs.,* 804 F.2d 964 (6th Cir. 1986) (Finding additional medical evidence was not material to decision as to whether claimant could perform light or sedentary work at of the Secretary's decision because a worsening of the condition after the decision did not affect the decision)*; Sturgill v. Colvin*, 2016 WL 2992217 at *4-5 (E.D. Ky. 2016) (The ALJ considered claim through the date last insured and the Appeals Council did not err in reviewing the decision because the new evidence did not go toward establishing disability prior to expiration of insured status).[1] Because the records are not material, remand is not warranted. This issue is without merit.

## IV. CONCLUSION

Based upon the foregoing, Plaintiff's motion for judgment on the pleadings [Doc. 17] is DENIED and the Commissioner's motion for summary judgment [Doc. 22] is GRANTED. A separate judgment shall enter.

SO ORDERED:

s/Clifton L. Corker
UNITED STATES MAGISTRATE JUDGE

---

[1] The Sixth Circuit has indicated that the appropriate approach is the initiation of a new claim for benefits as of the date the condition "aggravated to the point of constituting a disabling impairment." *Sizemore v. Sec'y of Health & Human Servs.,* 865 F.2d 709 (6th Cir. 1988).